[No. 11001-0-III.   Division Three.   October 3, 1991.]

NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, *Respondent*, v. MARK WATSON, *Appellant*.

---

*Richard C. Feltman* and *Feltman, Gebhardt, Eymann & Jones P.S.; David M. Grant* and *Crary & Clark, P.S.*, for appellant.

*Patrick K. Shine* and *Lukins & Annis P.S.*, for respondent.

GREEN, J.* — In December 1988 Mark Watson requested arbitration of his claim for uninsured motorist (UIM) benefits allegedly due him under a policy issued to Mike Owens by Nationwide Mutual Fire Insurance Company. On May 15, 1989, Nationwide filed a complaint for declaratory judgment, contending Mr. Watson had signed a third party release waiving his right to UIM coverage. Mr. Watson answered, raising affirmative defenses and counter-

---

*Judge Dale M. Green was a member of the Court of Appeals at the time oral argument was heard on this matter. He is now serving as a judge pro tempore of the court pursuant to RCW 2.06.150.

claims.[1] Nationwide moved for summary judgment dismissal which the court granted. Mr. Watson appeals; we reverse and remand.

The dispositive issue is whether the third party release barred Mr. Watson's first party claim for UIM benefits.

Mr. Watson was a passenger in the Owens car. He suffered permanent injury to his hand when the vehicle driven by Mr. Owens was involved in a 1-car accident.[2] Mr. Watson, as a third party claimant, brought an action against Mr. Owens for damages. The lawsuit was settled by Nationwide for $25,000, the limits of Mr. Owens' policy for bodily injury coverage. In exchange for the payment, Nationwide presented a general release dated August 26, 1987, to Mr. Watson for signature.[3] He signed this release on December 14 after his insurance carrier, Farmers Insurance Company, waived its subrogation rights.

---

[1]Mr. Watson also joined Farmers Insurance Company, his own carrier. The court granted summary judgment dismissal in favor of Farmers, just prior to dismissing Nationwide.

[2]The record indicates two tendons were severed. Subsequent to this accident, Mr. Watson was rendered a quadriplegic as the result of a second car accident.

[3]The signed release states:
"FOR THE SOLE CONSIDERATION of the sum of Twenty-Five Thousand and No/100 Dollars ($25,000.00), the receipt and sufficiency whereof is hereby acknowledged, the undersigned hereby releases and forever discharges . . . NATIONWIDE INSURANCE COMPANY . . . *from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever*, and particularly on account of all injuries to MARK WATSON, known and unknown, both to person and property, which have resulted or may in the future develop from an accident which occurred on or about the 8th day of April, 1984, in Spokane, Washington, and *including any and all claims, demands, damages, actions, causes of actions or suits of any kind or nature arising on or after said date relating to the manner in which any such claims, suits, etc., were evaluated, handled and/or processed.*

"Undersigned hereby agrees to indemnify, hold harmless and defend . . . NATIONWIDE INSURANCE COMPANY, . . . of and from all claims, including costs of defense and reasonable attorneys' fees, of any persons, companies, associations or departments of government which have paid or which shall pay medical bills, prescription drug expenses, hospital bills or property damage and which have or may become subrogated to the rights of the undersigned.

"Undersigned hereby declares that the terms of this settlement have been completely read and are fully understood and voluntarily accepted for the

Mr. Watson also presented a claim against Nationwide for PIP coverage and was paid $6,481.77. Since the August 26 release did not refer to PIP payments, Nationwide presented a second release to Mr. Watson, identical to the August 26 release except the consideration was increased to $31,481.77 reflecting the PIP payment. Mr. Watson on the advice of counsel did not sign this release.

Mr. Watson contends the executed release was signed for the sole purpose of settling the third party lawsuit against Mr. Owens, and did not nor was it intended to affect his first party claims for PIP and UIM coverage. Nationwide argues the release unambiguously states the settlement was a full and final compromise of all claims, disputed or otherwise, and thus includes all first party claims.

■ Releases are contracts and their construction is governed by the legal principles applicable to contracts. Releases are subject to judicial interpretation. *Vanderpool v. Grange Ins. Ass'n*, 110 Wn.2d 483, 488, 756 P.2d 111 (1988) (citing *Stottlemyre v. Reed*, 35 Wn. App. 169, 171, 665 P.2d 1383, *review denied*, 100 Wn.2d 1015 (1983)). In construing contracts, the court must determine the parties' intent as reflected by the entire circumstances under which the contract was made. *Berg v. Hudesman*, 115 Wn.2d 657, 801 P.2d 222 (1990) rejects the rule that an ambiguity must first appear within the language of the document before extrinsic evidence of the parties' intent is admissible. We conclude the court erred in granting judgment in favor of Nationwide for two reasons: (1) The extrinsic evidence supports Mr. Watson's contention the parties did not intend in the third party release to waive first party UIM coverage; and (2) the claimed release as to first party UIM coverage was not supported by consideration.

---

purpose of *making a full and final compromise adjustment and settlement of any and all claims,* disputed or otherwise, on account of the injuries and damages above mentioned, and *for the express purpose of precluding forever any further or additional claims arising out of the aforesaid accident.*

"Undersigned hereby accepts draft or drafts as final payment of the consideration set forth above." (Italics ours.)

■ Though the language of the release refers to a waiver of *all* claims, the release was tendered in settlement of a third party lawsuit against Nationwide's insured. Circumstances indicate the parties did not intend to release Mr. Watson's first party claim, based on his status as an insured in Mr. Owens' car. Mr. Watson's refusal to sign the second release, which included first party PIP payments, further indicates his intention not to release first party claims. The fact Nationwide sent the second release indicates the first only released third party claims. Additionally, prior to signing the release, it is undisputed Mr. Watson had not made a claim for UIM benefits and neither Mr. Watson nor Nationwide had discussed or contemplated UIM coverage. WAC 284-30-350(5) also mandates this analysis: "No insurer shall request a first party claimant to sign a release that extends beyond the subject matter that gave rise to the claim payment."

■ In addition to the parties' intent, a release requires consideration to be binding. 16 R. Anderson, *Couch on Insurance* § 60:6, at 7 (2d ed. 1983). Here, the consideration for the release is the settlement of all claims raised by Mr. Watson as a third party claimant in his lawsuit against Mr. Owens; it does not apply to those claims against Nationwide as a first party claimant. The evidence is undisputed that when the release was signed, the amount of the UIM claim was not liquidated. The payment of a liquidated amount admittedly owed under a policy does not, of itself, constitute a sufficient consideration for the release of an unliquidated claim under the policy. *Trompeter v. United Ins. Co.*, 51 Wn.2d 133, 139, 316 P.2d 455 (1957); 16 R. Anderson § 60:11. Nationwide's payment of liquidated amounts under bodily injury coverage did not constitute consideration for the release of an unliquidated claim subsequently made for UIM coverage. Absent the existence of a UIM claim, the money paid by Nationwide did not constitute an agreement to settle a first party claim for UIM coverage. *Trompeter*, at 139.

Summary judgment is appropriate only when the record demonstrates there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Meaney v. Dodd*, 111 Wn.2d 174, 759 P.2d 455 (1988). Although the determination of the intent of the parties to a contract is generally a question of fact, in this instance the evidence is undisputed the parties did not discuss or contemplate first party claims when the release was signed. Thus, summary judgment should not have been granted in favor of Nationwide; rather, judgment is entered in favor of Mr. Watson.[4] The matter is remanded for a determination of benefits due him under the UIM coverage.

The judgment is reversed and the cause is remanded for entry of judgment in favor of Mr. Watson.

THOMPSON, A.C.J., and MUNSON, J., concur.

Reconsideration denied November 27, 1991.

Review granted at 118 Wn.2d 1027 (1992).

---

[4]The record indicates the following language of the order of dismissal entered in favor of Farmers was approved by counsel for Nationwide:

Defendant/Third Party Plaintiff, MARK WATSON, is an insured and is entitled to underinsured motorist coverage for the accident of April 8, 1984, under Policy No. 79-2-093-593 issued by NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, Plaintiff.

Thus, the issue of Nationwide's liability for UIM coverage has been settled by the parties.