[No. 58885-6. En Banc. November 19, 1992.]

NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, *Petitioner*, v. MARK WATSON, *Respondent*.

*Lukins & Annis, P.S.,* by *Patrick K. Shine,* for petitioner.

*Feltman, Gebhardt, Eymann & Jones, P.S.,* by *Richard C. Feltman,* for respondent.

SMITH, J. — Petitioner Nationwide Mutual Fire Insurance Company seeks review of a decision of the Court of Appeals, Division Three, which reversed the trial court's summary judgment in favor of petitioner and granted summary judgment in favor of Respondent Mark Watson in a declaratory judgment proceeding relating to underinsured motorist (UIM) coverage arising out of an injury suffered by respondent while a passenger in an automobile driven by Michael Owens, petitioner's insured. We reverse the Court of Appeals.

## STATEMENT OF FACTS

On April 8, 1984, Respondent Mark Watson, while riding as a passenger, was injured in a 1-car accident.[1] He sustained a significant laceration to his right palm, damaging two tendons.[2] The vehicle was driven by Michael Owens, an insured of Petitioner Nationwide Mutual Fire Insurance Company (Nationwide).[3] The Nationwide policy had various

---

[1] Clerk's Papers, at 1.

[2] Clerk's Papers, at 131. Respondent Watson was subsequently rendered a quadriplegic as a result of a second automobile accident not material to this case.

[3] Clerk's Papers, at 66. At the time of the accident, Nationwide had in effect an insurance policy issued to Michael Owens' parents covering the vehicle involved in the accident. Clerk's Papers, at 2.

provisions for coverage, including comprehensive, collision, liability for both bodily injury and property damage, personal injury protection (PIP) and underinsured motorist (UIM) coverage.[4] Respondent Watson was entitled to PIP and UIM coverage under the policy because he was a passenger in the insured vehicle.[5] Nationwide paid Respondent Watson's medical bills and wage loss claim under the PIP coverage.[6] His medical expense claim totaled $3,952.17 and his wage loss claim totaled $2,529.60.[7]

On July 22, 1986, the attorney for Respondent Watson, Richard C. Feltman, made a claim on respondent's behalf for UIM benefits against Farmers Insurance Group, respondent's own insurer.[8] On July 29, 1986, Respondent Watson filed a lawsuit against Michael Owens and his parents for damages resulting from the accident.[9] Nationwide engaged an attorney, Harold D. Clarke, to represent its interests and the interests of its insured.[10] In August 1987 a settlement was negotiated in which Nationwide agreed to pay the policy limit of $25,000. This amount was in addition to the $6,481.77 which had been paid for medical expenses and wage loss. Nationwide evaluated Respondent Watson's damages as substantially less than $25,000.[11]

On August 18, 1987, a check for $25,000, which was subsequently negotiated, was issued by Nationwide to Respon-

---

[4]Clerk's Papers, at 62.

[5]Clerk's Papers, at 17, 20.

[6]Respondent Watson was working as a dishwasher at the time of the accident. He was unable to continue his employment for a period of time because of the injury to his hand. Clerk's Papers, at 63.

[7]Clerk's Papers, at 63.

[8]Clerk's Papers, at 111.

[9]Clerk's Papers, at 12-14.

[10]Clerk's Papers, at 130.

[11]Clerk's Papers, at 131-32.

dent Watson and his attorney.[12] On or about August 26, 1987, Nationwide's attorney prepared and submitted to respondent a release which read:

> FOR THE SOLE CONSIDERATION of the sum of Twenty-Five Thousand and No/100 Dollars ($25,000.00) . . . the undersigned hereby releases and forever discharges JACK OWENS, JANE DOE OWENS, MICHAEL OWENS and NATIONWIDE INSURANCE COMPANY, their heirs, executors, administrators, agents, legal representatives, assigns, employees, insurers, and all other persons, firms or corporations liable or who might be claimed to be liable, none of whom admit any liability to the undersigned but all expressly deny any liability, from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever, and particularly on account of all injuries to MARK WATSON, known and unknown, both to person and property, which have resulted or may in the future develop from an accident which occurred on or about the 8th day of April, 1984, in Spokane, Washington, and including any and all claims, demands, damages, actions, causes of actions or suits of any kind or nature arising on or after said date relating to the manner in which any such claims, suits, etc., were evaluated, handled and/or processed.
>
> Undersigned hereby agrees to indemnify, hold harmless and defend JACK OWENS, JANE DOE OWENS, MICHAEL OWENS and NATIONWIDE INSURANCE COMPANY, together with their respective agents, assigns, members, stockholders, employees, or insurers, of and from all claims, including costs of defense and reasonable attorneys' fees, of any persons, companies associations or departments of government which have paid or which shall pay medical bills, prescription drug expenses, hospital bills or property damage and which have or may become subrogated to the rights of the undersigned.
>
> Undersigned hereby declares that the terms of this settlement have been completely read and are fully understood and voluntarily accepted for the purpose of making a full and final compromise adjustment and settlement of any and all claims, disputed or otherwise, on account of injuries and damages above mentioned, and for the express purpose of precluding forever any further or additional claims arising out of the aforesaid incident.
>
> Undersigned hereby accepts draft or drafts as final payment of the consideration set forth above.[13]

---

[12]Clerk's Papers, at 97.

[13]Clerk's Papers, at 119.

In an affidavit signed by Nationwide's attorney, Harold D. Clarke, on June 29, 1990, he stated that the release was:

[I]ntended to be a full and complete Release of All Claims and for the express purpose of forever precluding any further or additional claims arising out of the accident. The Release was further designed to preclude all additional claims, demands, damages, actions, causes of action, or suits of any kind or nature arising from the accident. The Release was further intended to Release and forever discharge both the insureds and the insurance carrier from all claims.[14]

The regional claims attorney for Nationwide, George F. Shirley, stated in an affidavit dated January 17, 1990, that:

[I]t is the position of Nationwide Insurance Company that any claims against its insured or Nationwide were settled in August, 1987, when an agreement was reached with Mr. Watson to settle the claim for the payment of the liability limits, together with the PIP payments that had already been made. It was the belief of Nationwide Insurance Company that Mr. Watson was then compensated for his injuries and that all claims were specifically released.[15]

On or about September 4, 1987, Nationwide's attorney, Mr. Clarke, prepared and submitted to respondent an amended release which included the amount previously paid for medical expenses and wage loss. The amended release was identical to the original one, except that the amount of the settlement was indicated as $31,481.77 instead of the $25,000 previously indicated.[16] On September 21, 1987, Respondent Watson's attorney, Mr. Feltman, informed Mr. Clarke that he was making a claim for UIM coverage against respondent's own insurer, Farmers Insurance Company. Mr. Feltman also requested a copy of the Nationwide insurance policy, a certified copy of which was sent to him on November 20, 1987.[17] According to the affidavit of George F. Shirley, at no time

---

[14]Clerk's Papers, at 132.

[15]Clerk's Papers, at 64-65.

[16]Clerk's Papers, at 113. The record does not indicate what happened to the amended release.

[17]Clerk's Papers, at 133.

during the negotiations was there a demand by Respondent Watson for UIM benefits under the Nationwide policy.[18] In a memorandum on summary judgment, respondent indicated that there was "no discussion of resolving any UIM claims under the policy with Nationwide prior to the signing, or in conjunction with the signing of the release."[19]

On December 14, 1987, Respondent Watson, in the presence of a notary public, signed the original $25,000 release prepared by Mr. Clarke on August 26, 1987.[20] The release and the signed stipulation and order of dismissal were returned to Mr. Clarke by letter dated December 18, 1987, from respondent's attorney.[21] Upon presentation of the signed stipulation for dismissal, the Spokane County Superior Court (Commissioner Robert D. Austin) on December 22, 1987, entered an order dismissing the lawsuit against the Owenses "with prejudice and without costs."[22]

Respondent's attorney, Mr. Feltman, approximately a year after the lawsuit was dismissed, notified Mr. Clarke that Respondent Watson was making a claim for UIM coverage against Nationwide based upon indication by Farmers Insurance Company that Nationwide "would be primary to Farmer's as to the payment of underinsured motorist benefits."[23] On January 9, 1989, Mr. Clarke responded that the release signed by Respondent Watson on December 14, 1987, precluded any further claims against Nationwide.[24] On Jan-

---

[18]Clerk's Papers, at 64, 137.

[19]Clerk's Papers, at 80.

[20]Clerk's Papers, at 119.

[21]Clerk's Papers, at 120.

[22]Clerk's Papers, at 122.

[23]Clerk's Papers, at 100, 134.

[24]Clerk's Papers, at 126.

uary 11, 1989, he received a letter from Mr. Feltman request-
ing arbitration of the UIM claim against Nationwide.[25]

On May 15, 1989, Nationwide filed a declaratory judg-
ment action in the Spokane County Superior Court.[26] Both
Nationwide and Watson cross-motioned for summary judg-
ment.[27] On July 9, 1989, the Superior Court (the Honorable
Marcus M. Kelly) granted summary judgment in favor of
Petitioner Nationwide.[28] Respondent Watson appealed to the
Court of Appeals, Division Three, which on October 3, 1991,
reversed and granted summary judgment in favor of
Respondent Watson.[29] The court concluded that extrinsic
evidence supported respondent's contention that the parties
intended to waive only third party claims and did not intend
to waive first party UIM coverage by the release he signed
on December 14, 1987. The court stated that "Mr. Watson's
refusal to sign the second release, which included first party
PIP payments, further indicates his intention not to release
first party claims."[30] The court further concluded that the
payment by Nationwide of liquidated amounts owed under
the policy did not constitute consideration for release of an
unliquidated claim under the UIM coverage.

On January 10, 1992, Petitioner Nationwide filed a petition
for review in this court, which we granted on April 3, 1992.

## QUESTIONS

The questions presented in this case are: (1) whether the
release executed by Respondent Watson on December 14,

---

[25]Clerk's Papers, at 135.

[26]Clerk's Papers, at 1-3.

[27]Clerk's Papers, at 72, 79.

[28]Clerk's Papers, at 139-40.

[29]*Nationwide Mut. Fire Ins. Co. v. Watson*, 63 Wn. App. 139, 816 P.2d 1262
(1991).

[30]*Nationwide*, at 143.

1987, in favor of Petitioner Nationwide waived all claims under the Nationwide insurance policy, including UIM claims; and (2) whether the release was supported by sufficient consideration.

### DISCUSSION

■ On review of summary judgment, an appellate court engages in the same inquiry as the trial court.[31] Summary judgment is appropriate "if the pleadings, depositions, . . . together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[32] A material fact is one upon which the outcome of the litigation depends.[33] The court must consider the facts submitted and all reasonable inferences from those facts in the light most favorable to the nonmoving party and the motion should be granted only if, from all the evidence, reasonable persons could reach but one conclusion.[34]

Petitioner Nationwide argues that the Court of Appeals erred in granting summary judgment in favor of respondent because the evaluation of extrinsic evidence to determine the intent of the parties to a contract is usually a question of fact. Respondent Watson claims that summary judgment is appropriate because there was no discussion of UIM benefits between Nationwide and him and therefore the release could not bar a UIM claim which the parties did not contemplate. Respondent acknowledges that Washington case law generally upholds releases, but cites *Finch v. Carlton*[35] for the proposition that releases have been held invalid where they do not reflect the intent of the parties.

---

[31]*Marincovich v. Tarabochia*, 114 Wn.2d 271, 787 P.2d 562 (1990).

[32]CR 56(c).

[33]*Jacobsen v. State*, 89 Wn.2d 104, 569 P.2d 1152 (1977).

[34]*Wilson v. Steinbach*, 98 Wn.2d 434, 656 P.2d 1030 (1982).

[35]84 Wn.2d 140, 524 P.2d 898 (1974).

 A release is a contract and its construction is governed by contract principles subject to judicial interpretation in light of the language used.[36] Under contract law, a release is voidable if induced by fraud, misrepresentation or overreaching or if there is clear and convincing evidence of mutual mistake.[37] In deciding the voidability of releases, two competing policies are considered. The law favors just compensation of accident victims. However, the law also favors private settlement of disputes. Releases are therefore given great weight to support the finality of those settlements.[38]

Respondent Watson correctly acknowledges that this court has generally upheld the validity of releases. In *Beaver v. Estate of Harris*,[39] this court upheld a release which the plaintiff attempted to void under the theory of mutual mistake. Plaintiff signed a general release and later claimed the parties had not contemplated the true extent of his injuries. The court concluded that plaintiff had made a unilateral mistake and upheld the release. In *Metropolitan Life Ins. Co. v. Ritz*,[40] defendants executed and acknowledged before their attorney, as notary, a full release of all claims. Defendants later claimed that the release was for wage loss and general damages only and that it made no mention of, and was not intended to include, claims for medical expenses. This court concluded that regardless of the intent of the parties, an unconditional general release of "all claims" included all claims as a matter of law. In *Bennett v. Shinoda Floral, Inc.*,[41] plaintiffs signed releases when they knew they were

---

[36]*Vanderpool v. Grange Ins. Ass'n*, 110 Wn.2d 483, 756 P.2d 111 (1988).

[37]*Beaver v. Estate of Harris*, 67 Wn.2d 621, 409 P.2d 143 (1965).

[38]*Bennett v. Shinoda Floral, Inc.*, 108 Wn.2d 386, 739 P.2d 648 (1987) (quoting *Finch v. Carlton*, 84 Wn.2d 140, 524 P.2d 898 (1974)).

[39]67 Wn.2d 621, 409 P.2d 143 (1965).

[40]70 Wn.2d 317, 422 P.2d 780 (1967).

[41]108 Wn.2d 386, 739 P.2d 648 (1987).

injured, but did not know the extent or the consequences of their injuries. The court upheld the releases, concluding that an injured person who signs a release should be aware that a change in prognosis can result in insufficient compensation for the injury.

■ Respondent Watson knew he had been injured. His attorney was pursuing UIM benefits with Watson's own insurer, Farmers, prior to receiving the proposed release from Petitioner Nationwide. Respondent retained the proposed release for 4 months before he actually signed it. He had the assistance of counsel during that period and signed it in the presence of a notary public. His position is similar to that of the defendants in *Metropolitan Life Ins. Co.*

Respondent's reliance on *Finch v. Carlton, supra,* is misplaced. There, plaintiff, 1 month after an automobile accident, signed a release of all claims resulting from the accident. At the time, he was not aware that he had sustained any injuries, their not becoming evident until 3 months after the accident. This court concluded that a release may be avoided "where later-discovered injuries were clearly not contemplated by the parties at the time of release."[42] *Finch* is specifically limited to its facts.[43] In this case, Respondent Watson, at the time he signed the release, knew he had been injured. Additionally, prior to signing it, his attorney had inquired of Watson's own insurer about UIM benefits. Yet, respondent still later signed the general release to Nationwide without reserving any claim.

Both Respondent Watson and Petitioner Nationwide cite *Berg v. Hudesman.*[44] In *Berg,* this court stated that "[w]hether or not ambiguity is apparent from the face of the contract, evidence of the circumstances of the making of the contract is admissible."[45] Respondent Watson claims that

---

[42] *Finch,* at 144.

[43] *Bennett,* at 394.

[44] 115 Wn.2d 657, 801 P.2d 222 (1990).

[45] *Berg,* at 678.

*Berg* does not require the trier of fact to evaluate extrinsic evidence because, as the Court of Appeals found, "the evidence is undisputed the parties did not discuss or contemplate first party claims when the release was signed."[46] Petitioner Nationwide argues that under *Berg*, if the interpretation of a contract depends on the credibility of extrinsic evidence, the determination should be made by the trier of fact. Petitioner states that the extrinsic evidence (that respondent was aware of the potential for first party claims against Nationwide because he had received first party PIP benefits and that respondent was represented by counsel who presented a UIM claim against Watson's own insurer) creates questions of fact regarding the intent of the parties.

■ Under *Berg*, "extrinsic evidence is admissible as to the entire circumstances under which the contract was made, as an aid in ascertaining the parties' intent."[47] In approving the context rule, this court also stated that such evidence is not admitted for the purpose of importing an intention not expressed in the writing, but to give meaning to the words employed. Extrinsic evidence illuminates what was written, not what was intended to be written.[48]

In this case, what was written was a general release releasing the Owenses and Nationwide from "any and all claims . . . of any kind or nature whatsoever, and particularly on account of all injuries to Mark Watson, known or unknown . . . from an accident which occurred on or about the 8th day of April 1984. . . ." Petitioner Nationwide and Respondent Watson may have had different subjective intentions, but the words employed in the general release signed by respondent on December 14, 1987, clearly constitute a release of all claims.

■ ■ A release may be voidable if there is clear and convincing evidence of mutual mistake. A mutual mistake

---

[46]*Nationwide*, at 144.

[47]*Berg*, at 667.

[48]*Berg*, at 669.

is a mistake independently made by both parties regarding a basic assumption of the contract unless the party seeking to avoid the contract bears the risk of the mistake.[49] The test for mutual mistake is whether the contract would have been concluded if there had been no mistake, that is, that neither party would have entered into the contract if they had a proper understanding of the material facts.[50]

■ Respondent Watson bears some risk of mistake regarding what the release purported to release. A party "bears the risk of mistake when, at the time the contract is made, the party is aware of limited knowledge with respect to the facts to which the mistake relates but treats such limited knowledge as sufficient."[51] Although respondent and Nationwide did not discuss UIM coverage, respondent's attorney had corresponded with his own insurer about such coverage and received a certified copy of the Nationwide policy prior to signing the release. Respondent thus had some knowledge of UIM coverage. Nevertheless, he signed the general release on December 14, 1987. "It is said in such a situation that there is no mistake; instead, there is an awareness of uncertainty, a conscious ignorance of the future."[52] There is no clear and convincing evidence of mutual mistake in this case. The release is thus binding on Respondent Watson, who signed it.

Upholding the validity of the release precludes Respondent Watson from recovering UIM benefits from Nationwide. This may broadly be characterized as a contractual exclusion of UIM benefits. Some contractual exclusions have been held to be contrary to the public policy behind the UIM statute. The legislative purpose of the UIM statute "is

---

[49]*Pepper v. Evanson,* 70 Wn.2d 309, 422 P.2d 817 (1967), *overruled on other grounds in Simonson v. Fendell,* 101 Wn.2d 88, 675 P.2d 1218 (1984); *Bennett,* at 396.

[50]*Pepper,* at 314.

[51]*PUD 1 v. WPPSS,* 104 Wn.2d 353, 362, 705 P.2d 1195 (1985).

[52]*PUD 1,* at 362.

not to be eroded . . . by a myriad of legal niceties arising from exclusionary clauses. RCW 48.22.030 [the UIM statute] should be read, therefore, to declare a public policy overriding the exclusionary language so that the intendments of the statute are read into and become a part of the contract of insurance."[53]

▮ The UIM statute does not address the validity of releases purporting to release UIM coverage. However, such exclusions are permitted if they do not disturb the statutory policy behind UIM coverage.[54] In *Millers Cas. Ins. Co. v. Briggs,*[55] passengers in a 1-car accident sought coverage under both the liability and UIM provisions of an insurance policy covering the host vehicle. The policy provided recovery under the liability provisions, but excluded the passengers from UIM coverage. In upholding the exclusion, the court differentiated between *underinsured* coverage and *uninsured* coverage.[56] In underinsured coverage, the injured party has not paid a premium for coverage to the insurer; the injured party is undercompensated, but not left without any compensation; and the injured party may collect additional compensation from that party's own UIM coverage. The court concluded that although "it is unquestioned in this case that the liability coverage paid by Millers [Casualty Insurance] does not fully compensate respondents . . . [that] does not change our conclu-

---

[53]*Touchette v. Northwestern Mut. Ins. Co.,* 80 Wn.2d 327, 335, 494 P.2d 479 (1972).

[54]*Millers Cas. Ins. Co. v. Briggs,* 100 Wn.2d 1, 665 P.2d 891 (1983).

[55]100 Wn.2d 1, 665 P.2d 891 (1983).

[56]*Uninsured motorist coverage* applies when at least one person legally responsible for an accident does not have liability coverage. *Underinsured motorist coverage* permits recovery for the insured when the tortfeasor has insurance, but in an insufficient amount. The 1980 amendment to RCW 48.22.030 includes uninsured vehicles within the definition of underinsured vehicles. *See Britton v. Safeco Ins. Co. of Am.,* 104 Wn.2d 518, 707 P.2d 125 (1985); Comment, *Washington's Underinsured Motorist Statute: Balancing the Interests of Insurers and Insureds,* 55 Wash. L. Rev. 819 (1980).

sion that public policy and RCW 48.22.030 do not require dual recovery in this situation."[57]

Upholding the release entered into by Respondent Watson with Petitioner Nationwide, thus precluding UIM recovery under the Nationwide policy, does not thwart the public policy behind the UIM statute. Respondent did not pay a premium to Nationwide, he has been partially compensated by Nationwide through the liability provisions of the policy, and he might still be able to collect additional compensation from his own insurer, Farmers Insurance Company.

The Court of Appeals additionally cited WAC 284-30-350(5) in support of its interpretation of the release. That section states:

> No insurer shall request a first party claimant to sign a release that extends beyond the subject matter that gave rise to the claim payment.

Petitioner Nationwide argues that the subject matter which gave rise to respondent's claim was the accident of April 8, 1984. Respondent Watson identifies the subject matter as the lawsuit between him and the Owenses. Respondent also claims that petitioner violated WAC 284-30-350(1)[58] and WAC 284-30-350(2)[59] by not disclosing to him that he had UIM coverage.

WAC 284-30-300 *et seq.* are regulations promulgated by the Insurance Commissioner, pursuant to RCW 48.30.010(2) and RCW 48.02.060, which define unfair or deceptive acts.[60] Respondent Watson cites *Industrial Indem. Co. of North-*

---

[57]*Millers*, at 8.

[58]"No insurer shall fail to fully disclose to first party claimants all pertinent benefits, coverages or other provisions of an insurance policy or insurance contract under which a claim is presented."

[59]"No agent shall conceal from first party claimants benefits, coverages or other provisions of any insurance policy or insurance contract when such benefits, coverages or other provisions are pertinent to a claim."

[60]*Villella v. Public Employees Mut. Ins. Co.*, 106 Wn.2d 806, 725 P.2d 957 (1986).

*west, Inc. v. Kallevig*[61] to support his contention that the release is contrary to the public policy against unfair trade practices. However, that case did not address WAC 284-30-350, but instead addressed WAC 284-30-330, which defines a series of unfair claims settlement practices.

WAC 284-30-350 is titled "Misrepresentation of policy provisions". There is no evidence in this case that Petitioner Nationwide misrepresented the UIM policy provisions to respondent. Respondent Watson was represented by counsel throughout negotiations on his claim and his counsel was provided a certified copy of the Nationwide policy prior to his signing the release. The narrow reading of "subject matter" urged by respondent would prevent a general release of claims arising under the Nationwide policy. There is no compelling reason in this case for WAC 284-30-350 to affect the validity of the release. Respondent's counsel received a copy of the Nationwide policy and the release, received correspondence from Mr. Clarke stating that full and final settlement was being sought, and sought UIM benefits from respondent's own insurance company. Respondent and his counsel could have excepted UIM claims from the Nationwide release before signing it, but chose not to do so.

The Court of Appeals erred in entering summary judgment in favor of Respondent Watson. The language of the release clearly states that it releases "any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever . . . on account of all injuries to MARK WATSON, known and unknown . . .". Extrinsic evidence admitted under the *Berg* rule shows that, at best, the intent of Respondent Watson to release only third party claims was a unilateral mistake. The release should be upheld as a matter of law and Petitioner Nationwide is thus entitled to summary judgment in its favor.

The Court of Appeals also concluded that the release was not supported by consideration. Citing *Trompeter v. United*

---

[61]114 Wn.2d 907, 792 P.2d 520 (1990) (a first party insured may bring a Consumer Protection Act action resulting from a single violation of WAC 284-30-330).

*Ins. Co.*,[62] the court stated that, "[t]he payment of a liqui-
dated amount admittedly owed under a policy does not, of
itself, constitute a sufficient consideration for the release of
an unliquidated claim under the policy."[63] The court consid-
ered the UIM claim to be unliquidated and the $25,000
settlement to be a liquidated amount. Petitioner Nationwide
asserts that the court misapplied *Trompeter* because the
$25,000 was not admittedly due. It also asserts that for-
bearance to defend an action constitutes consideration.
Respondent Watson claims that petitioner did not forbear a
defense, but that it merely settled a cause of action on
behalf of its insured.

■ A liquidated claim is one " 'where the evidence fur-
nishes data which, if believed, makes it possible to compute
the amount with exactness, without reliance on opinion or
discretion.' "[64] An unliquidated claim is one " 'where the
exact amount of the sum to be allowed cannot be definitely
fixed from the facts proved, disputed or undisputed, but
must in the last analysis depend upon the opinion or discre-
tion of the judge or jury as to whether a larger or smaller
amount should be allowed.' "[65]

■ The reliance of the Court of Appeals on *Trompeter*
was misplaced. In *Trompeter*, the amount paid was specifi-
cally provided in the insurance policy and, therefore, was a
liquidated obligation. Here, Petitioner Nationwide, in addi-
tion to $6,481.77 paid for medical costs and wage loss, paid
the policy limit of $25,000, which was in excess of what it
had concluded the claim was worth. The amount paid was
discretionary and not definitely fixed and, therefore, was an
unliquidated amount.

---

[62]51 Wn.2d 133, 316 P.2d 455 (1957).

[63]*Nationwide*, at 143.

[64]*Hansen v. Rothaus*, 107 Wn.2d 468, 472, 730 P.2d 662 (1986) (quoting *Prier
v. Refrigeration Eng'g Co.*, 74 Wn.2d 25, 32, 442 P.2d 621 (1968)).

[65]*Hansen v. Rothaus, supra* at 473 (quoting *Prier*, at 33).

A good faith settlement of a dispute has been held to be sufficient consideration for a compromise to settle that claim. In *Rogich v. Dressel,*[66] this court concluded that settlement of a dispute relating to the existence of a trust was sufficient consideration to support a compromise and the resulting release. Similarly, in this case the payment of an unliquidated amount by Petitioner Nationwide to settle all claims arising from the accident in which Respondent Watson was injured constituted sufficient consideration to support the release.

 Whether a contract is supported by consideration is a question of law and may be properly determined by a court on summary judgment.[67] In this case, the Court of Appeals erroneously concluded that the release was not supported by consideration. The settlement amount was unliquidated and settlement of respondent's claim was sufficient consideration to support the release. Petitioner Nationwide is thus entitled to summary judgment in its favor.

## CONCLUSION

We therefore reverse the decision of the Court of Appeals granting summary judgment in favor of Respondent Mark Watson and remand for summary judgment in favor of Petitioner Nationwide Mutual Fire Insurance Company. The release signed by Respondent Watson waived all claims, including UIM coverage, under the Nationwide insurance policy for injuries arising from the accident and the release was supported by sufficient consideration.

DORE, C.J., and UTTER, BRACHTENBACH, DOLLIVER, ANDERSEN, DURHAM, GUY, and JOHNSON, JJ., concur.

Reconsideration denied January 7, 1993.

---

[66]45 Wn.2d 829, 278 P.2d 367 (1954).

[67]*Keeter v. John Griffith, Inc.,* 40 Wn.2d 128, 241 P.2d 213 (1952).