46 F.3d 1148
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
VICTORIA C., Plaintiff-Appellant,
v.
CINCINNATI BENGALS, INC., Eric Ball, Professional Football
Player; Leo Barker, Professional Football Player;
Lewis Billups, Professional Football
Player, et al., Defendants-Appellees.
 No. 93-35595.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 4, 1994.
Decided Dec. 5, 1994.
 
 Before: ALARCON, BEEZER and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Victoria Crytzer appeals from a judgment entered pursuant to Rule 54(b), Fed.R.Civ.Pro. 54(b), upon a jury verdict in favor of the Cincinnati Bengals, Inc., and certain members of that football team ("the Bengals"), upholding the validity of a release of her claims against the defendants. Crytzer's action for personal injury damages and rescission of the release arises from alleged multiple rapes on October 3, 1990, by fourteen members of the Cincinnati Bengals professional football team.
 
 
 3
 Crytzer contends that the district court erred in denying her motion for partial summary judgment because the release was the product of overreaching and undue influence as a matter of law. Crytzer also asserts that the release is ambiguous and that its subject matter is not certain and definite. Crytzer further claims that the release is not supported by adequate consideration and its nondisclosure provision violates public policy.
 
 
 4
 Crytzer also argues that the court abused its discretion in bifurcating the trial because the order resulted in the exclusion of evidence relevant to coercion, undue influence and overreaching. Crytzer maintains that the timing of the order, and the early trial setting, prejudiced her right to complete necessary discovery and prepare for trial. Crytzer further asserts that the court erred in refusing to give certain jury instructions that she proposed. Finally, she alleges that the district court abused its discretion in excluding evidence of her present condition and future prognosis. We affirm because we conclude that none of these contentions is meritorious.
 
 I.
 
 5
 On April 10, 1992, Crytzer filed an action in state court against the Cincinnati Bengals for damages for personal injuries arising out of a multiple rapes, and for rescission of a release of all claims arising out of the Bengals' conduct. The Bengals removed the action to federal court on the basis of diversity jurisdiction on April 23, 1992. On September 4, 1992, Crytzer filed an amended complaint naming certain members of the Bengals' football team as defendants.
 
 
 6
 At a status conference conducted on October 28, 1992, the parties stipulated that the trial would commence on June 7, 1993. On February 5, 1993, in a telephone conference with all counsel, the district court appointed a discovery master and warned that the trial would be continued if the court concluded that the Bengals had "stone-walled legitimate discovery" by Crytzer. The district court also directed counsel to discuss whether the validity of the release should be tried to the jury first in mid-March, "by way of bifurcation."
 
 
 7
 On February 10, 1993, Crytzer filed a memorandum opposing bifurcation of the rescission claim and the early trial setting. On February 19, 1993, less than one month before the discovery cut-off date, the district court issued a written order limiting discovery to the validity of the alleged release and submitting the release claim to a bifurcated jury trial on March 22, 1993.
 
 
 8
 At trial, Crytzer's factual theories regarding the validity of the release were presented to the jury. On April 9, 1993, the jury found that the release was valid. On the same date, the court granted the Bengals' Rule 50(a) motion for judgment on Crytzer's remaining legal challenges to the validity of the release. The Bengals did not request the entry of judgment regarding the personal injury claims in their Rule 50(a) motion. On April 15, 1993, the district court directed entry of judgment on the rescission claim pursuant to Rule 54(b), finding no just reason for delay. The order directing entry of Rule 54(b) judgment provides as follows:
 
 
 9
 As this matter was bifurcated so that the claims relating to the validity of the contract were tried first, and there remain other claims by Plaintiff, as well as counterclaims by Defendants; and as the jury has returned a verdict holding the contract valid and precluding Plaintiff's pursuit of other claims; and as the Court made the following rulings at the close of trial: Granted Defendants' Motion for Dismissal, pursuant to Rule 50(a), of Plaintiff's claims based on (1) ambiguity, (2) inadequate consideration, (3) violation of public policy, and (4) illegality; there is no just reason for delay and the Clerk of the Court is hereby directed to enter judgment upon the verdict pursuant to Fed.R.Civ.P. 54(b).
 
 
 10
 (emphasis added).
 
 
 11
 The court's judgment was also entered by the clerk on April 15, 1993. It reads as follows: "It is ordered and adjudged by jury verdict that the contract between plaintiff and defendants is valid." No reference was made in the judgment entered on April 15, 1993 to the remaining personal injury claims against the Bengals and the individual defendants. The notice of appeal is from "the specific final judgment entered in this case on April 15, 1993, and all interlocutory orders associated therewith of the United States District Court for the Western District of Washington."
 
 
 12
 We have reviewed the record in this matter and the docket entries. We have not found any reference to any order reflecting the dismissal of Crytzer's personal injury claims. The record does not contain a separate final judgment disposing of Crytzer's personal injury claims pursuant to Rule 58 of the Federal Rules of Civil Procedure. Rule 58 provides in pertinent part that "[e]very judgment shall be set forth on a separate document. A judgment is effective only when so set forth and when entered as provided in Rule 79(a)." Fed.R.Civ.Pro. 58. Thus, the "final judgment" before us in this appeal pertains solely to the rescission claim.
 
 II.
 
 13
 Crytzer argues that the trial court should have granted her motion for partial summary judgment. The trial court summarily denied the motion by minute order on March 8, 1993, prior to the filing of any opposition by the Bengals.
 
 
 14
 Crytzer contends that her motion for partial summary judgment should have been granted because the record shows that the release was the product of undue influence. We disagree. The undue influence claim was resolved against Crytzer by the jury. Consequently, the denial of the partial summary judgment motion on this ground is not properly before this court. See Locricchio v. Legal Services Corp., 833 F.2d 1352, 1359 (9th Cir.1987) ("[T]he denial of a motion for summary judgment is not reviewable on an appeal from a final judgment entered after a full trial on the merits.") (footnote omitted).
 
 
 15
 Crytzer's remaining legal challenges to the release were dismissed by the district court pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. Crytzer contends that the district court's ruling is erroneous as a matter of law. We construe the challenged provisions of the release according to the substantive law of Washington because our jurisdiction is based on diversity. West v. State Farm Fire And Casualty Co., 868 F.2d 348, 350 (9th Cir.1989).
 
 
 16
 Crytzer asserts that the release is invalid because it refers to the defendants as "certain persons" and fails to identify them by name. The release states that on Thursday, October 4, 1990, "certain persons" had contact with Crytzer "in Seattle Washington, which contact was offensive to her and which contact was without her consent." The release provides that it extends to certain persons known to James Perry and "all others who may be liable" from any claims "arising out of the alleged contact that occurred on Thursday, October 4, 1990."
 
 
 17
 Crytzer argues that "it is impossible for a party to come to an agreement with 'certain persons'." Appellant's Opening Brief at 14. Crytzer relies on Clark v. Great Northern Ry. Co., 81 F. 282, 283 (C.D.Wash.1897) for this proposition. In Clark, a contract between a railroad and the people of Spokane and vicinity was invalidated because it was "impossible to find that the parties on the Spokane side of the agreement ever placed themselves in a situation to be compellable to do anything." Id. at 284. The instant case is clearly distinguishable because the release identified the parties as Crytzer and persons known to James Perry, the attorney for the Bengals. James Perry entered the names of these persons on a separate document that was maintained in a sealed envelope until Perry was directed by court order to open the envelope. A copy of this document was introduced by Crytzer as an exhibit at trial.
 
 
 18
 Crytzer also relies on Shofler v. Jordan, 284 S.W.2d 612, 614 (Mo.Ct.App.1955) to support her assertion that "[m]ere reference to an envelope containing a list of names of 'certain persons' does not constitute sufficient identification ..." Appellant's Opening Brief at 13. Her reliance on Shofler is misplaced. In Shofler, the court recognized that the parties to a contract need not be formally named. Id. at 614. The Restatement (Second) of Contracts is in accord: a contract need only reasonably identify the parties to it. Restatement (Second) of Contracts Sec. 131, comment f (1981). The release reasonably identifies all the parties.
 
 III.
 
 19
 Crytzer maintains that the release is uncertain because it does not adequately identify the subject matter. Crytzer also argues that the release is ambiguous because it refers to an offensive contact that occurred on October 4, 1990 in Seattle, Washington. The second amended complaint alleges that the sexual assaults committed by the individual defendants occurred on October 3, 1990, in Tukwila, Washington.
 
 
 20
 The Bengals argue that the release adequately defines the subject matter because it refers to the "alleged contact that occurred on Thursday, October 4, 1990" with Crytzer, "which contact was offensive to her ... and was without her consent." The Bengals also assert that any inaccuracy as to the date of the event is attributable to Crytzer who first asserted that the event occurred on October 4, 1990, and then changed the date to October 3, 1990.
 
 
 21
 Crytzer testified at trial that she "absolutely" understood that the release covered the events at the Doubletree Suites Hotel. In Berg v. Hudesman, 801 P.2d 222 (Wash.1990), the Supreme Court of Washington held "that extrinsic evidence is admissible as to the entire circumstances under which the contract was made, as an aid in ascertaining the parties' intent." See also Nationwide Mut. Fire Insur. Co. v. Watson, 840 P.2d 851, 857 (Wash.1992) ("[E]xtrinsic evidence is not admitted for the purpose of importing an intention not expressed in the writing, but to give meaning to the words employed."). Crytzer's testimony demonstrates that the subject matter of the release is not uncertain or ambiguous.
 
 
 22
 Crytzer also contends that the release is vague, uncertain, and indefinite because it contains a promise not to disclose its terms but does not define the term "public disclosure." The release provides that
 
 
 23
 the Undersigned further states that the terms of this Release will not be publicly disclosed by her. In the event of public disclosure of the terms of this Release by the Undersigned, the undersigned agrees to forfeit the settlement proceeds and return the $30,000.00 to James Perry, Attorney at Law....
 
 
 24
 In support of her argument, Crytzer relies on cases that hold that the promise given must be sufficiently definite to enable the court to determine the meaning of the words used so that it can be readily determined if the contract has been breached. Her reliance on Schuehle v. Schuehle, 152 P.2d 608 (Wash.1944) and Johnson v. Star Iron And Steel Co., 511 P.2d 1370 (Wash.Ct.App.1973) is misplaced. The gist of Crytzer's claim is that the nondisclosure provision might preclude her from reporting to the police or to her medical providers the fact that she had been sexually assaulted. The release does not prohibit disclosure of the alleged sexual assault. Instead, it prohibits disclosure of "terms of the Release." Crytzer has failed to demonstrate that the release is uncertain, indefinite or vague.
 
 IV.
 
 25
 Crytzer contends that there is insufficient consideration for the release because the payment of $30,000 was in exchange for the promise not to make a public disclosure of its terms. Crytzer asserts that the additional promise to release all claims is therefore "wholly unsupported by any consideration." Appellant's Opening Brief at 19.
 
 
 26
 "A good faith settlement of a disputed claim has been held to be sufficient consideration for a compromise to settle that claim." Nationwide Mut. Fire Insur. Co. v. Watson, 840 P.2d 851, 860 (Wash.1992). Crytzer's claim was disputed by the Bengals. The inclusion of a forfeiture provision defining a liquidated sum allocable to Crytzer's breach of the nondisclosure promise does not mean that the promise to release all claims was unsupported by consideration. A liquidated damages provision that is a reasonable forecast of just compensation for the harm caused by the breach is enforceable in the state of Washington. Perry v. Moran, 766 P.2d 1096 (Wash.), cert. denied, 492 U.S. 911 (1989); Walter Implement, Inc. v. Focht, 730 P.2d 1340, 1343 (Wash.1987). The release is indivisible and supported by adequate consideration.
 
 V.
 
 27
 Crytzer argues that the release violates public policy because the nondisclosure provisions preclude her from reporting the alleged assaults to the police and other relevant agencies. As discussed above, the release does not preclude Crytzer from reporting the alleged sexual assaults to the police or other relevant agencies. It merely prohibits disclosure of the terms of the release. The nondisclosure provision does not violate public policy.
 
 VI.
 
 28
 Crytzer asserts that the district court erred in bifurcating the trial on the validity of the release. We review a decision to bifurcate for abuse of discretion. Counts v. Burlington N.R.R. Co., 952 F.2d 1136, 1139 (9th Cir.1991).
 
 
 29
 Crytzer argues that requiring her to proceed first on the rescission claim was prejudicial because the exclusion of evidence of the sexual attack upon her unduly restricted her presentation of evidence concerning her state of mind on the date she signed the release. She also maintains that the early trial date prevented her from completing necessary discovery and interfered with her preparation for trial.
 
 
 30
 Rule 42(b) of the Federal Rules of Civil Procedure provides that "[t]he court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim ..." Fed.R.Civ.P. 42(b). We have previously upheld separate trials conducted before the same jury where the validity of an alleged release was tried prior to the damages phase in an action brought under the Federal Employers' Liability Act (FELA), 45 U.S.C. Secs. 51-60. Counts, 952 F.2d at 1144. In Counts, rescission of the release was sought on the grounds of fraud, duress, mutual mistake, and inadequate consideration. Id. at 1139-42. Because only one of the four theories that were presented to the jury was without error, we remanded for a new trial on the validity of the release. Id. at 1140-1142. We also determined that a new trial was required on the damages aspect of the employee's case because the district court erroneously admitted an internal memorandum that contained the employer's thoughts about the case that "was not relevant in the damages phase and was very prejudicial." Id. at 1144.
 
 
 31
 In her memorandum opposing bifurcation, Crytzer argued that evidence of the details of the alleged rape and its impact on Crytzer's psychological status were relevant to show her state of mind at the time she signed the release. Following the court's order of bifurcation and prior to opening statements, Crytzer proposed that there "be no evidence on the rape or whether she went to the police or whether she had consensual sex before we claim the rapes occurred. That if we open the door on that, then we have a rape trial and we haven't had discovery." Crytzer asserted that her experts could provide testimony as to her severe post-traumatic stress disorder "without saying what was the traumatic event, the catalyst for the diagnoses. So we can effectively eliminate the rape evidence from this trial and leave it very simple, we make these claims, they make these claims, without getting into the details and the inflammatory matters."
 
 
 32
 Crytzer introduced the testimony of two rape crisis counselors with whom she had spoken from September through December of 1991. They testified regarding Crytzer's demeanor around the time of the release and the following months. Crytzer also introduced expert witness testimony to explain the "anniversary" phenomenon. Her expert testified that a victim of abuse who suffers from post-traumatic stress syndrome experiences a variety of symptomatology around the anniversary date of a traumatic event. This witness and Crytzer's treating physicians testified that she was suffering from post-traumatic stress syndrome at the time she signed the release.
 
 
 33
 The record demonstrates that prior to the close of Crytzer's case, the district court offered Crytzer the opportunity to reopen her case in chief to include "more witnesses to get into the specifics of what transpired at the Doubletree Hotel." Counsel responded that "to open that door or to bring in more evidence of [the rape] at this stage puts us at a major handicap because we haven't completed discovery" and have not been able to prepare "for that kind of a case." Crytzer's counsel also told the court that the matter should "proceed the way it's going. I think that it has turned out better than I thought it would...." The district court then stated "[t]he ball is in your court and you still have time left, so." The record reveals the following colloquy:
 
 
 34
 Ms. Vreeland: We've given it a great deal of thought and discussion. It is our position that to open it up now would be impossible. That the only way to try the whole case--
 
 
 35
 The Court: Wrong.
 
 
 36
 Ms. Vreeland: May I finish?
 
 
 37
 The court: You're trying to make some kind or a record, Ms. Vreeland, but you're not doing a very good job of it.
 
 
 38
 ...
 
 
 39
 I'm giving you an opportunity. If you think that you have not had an adequate opportunity to show the frame of mind of your client because you haven't been able tell what happened at the Doubletree Inn that night, I want you to say it. Either yes ... or no ...
 
 
 40
 Ms. Vreeland: I can't say that ..
 
 
 41
 The Court: All right. Then I'll give you an opportunity. I'll continue the case for a couple of weeks so you can take depositions, you can do your discovery and then you can be prepared to make that presentation.
 
 
 42
 Ms. Vreeland: This case would have been tried completely differently. Opening statements would have been different. We have put on witness after witness for nine days nearly now. All of them have been restricted. We'd have to put everybody on again to show our case because everybody--
 
 
 43
 The Court: Put everybody on again?
 
 
 44
 Ms. Vreeland: Everybody's testimony has been very limited. So what this does now is says, oh, she can just simply tell her story. You guys take a couple of weeks, try to regroup.
 
 
 45
 The Court: I didn't say that.
 
 
 46
 Ms. Vreeland: Well, and then the defendants have had their opportunity to put on their whole case when we've been restricted. So we do not believe it would be fair--
 
 
 47
 The Court: You're going to have an opportunity to present your case.
 
 
 48
 Ms. Vreeland: Your Honor, we believe the only way to do this is to stop this trial at a mistrial and start over
 
 
 49
 The Court: This is a motion for a mistrial?
 
 
 50
 Ms. Vreeland: Yes.
 
 
 51
 The Court: It's denied.
 
 
 52
 Ms. Vreeland: We do not believe that there is any way that Crytzer can get a fair trial by opening it up at this late date. So, therefore we believe the only way is to keep it limited as you have.
 
 
 53
 The Court: I understand what you're saying. You're satisfied with keeping it limited the way it is?
 
 
 54
 Ms. Vreeland: Absolutely.
 
 
 55
 Crytzer's argument that the bifurcation resulted in the exclusion of relevant evidence has no merit. Crytzer introduced evidence of her state of mind on the date she signed the release. Dr. Shirley Feldman-Summers testified that, in her opinion, Crytzer was suffering from severe psychological symptoms of anxiety prior to the execution of the release, "starting with January 1991 through that fall." Dr. Feldman-Summers also asserted that Crytzer was not competent in 1991, at the time the release document was signed, and that she did not have the sufficient mental capacity to understand the nature, terms and effect of the transaction.
 
 
 56
 Dr. Feldman-Summers also stated that Crytzer's pre-existing condition in October of 1991 was very fragile. She opined that the trauma that she experienced at the Doubletree Suites Hotel had a greater impact on her because of her mental condition. Dr. Feldman-Summers explained the "anniversary" phenomenon that a victim of abuse suffering from post-traumatic stress syndrome experiences around the anniversary date of a traumatic event. Crytzer relied on this evidence in her closing argument.
 
 
 57
 Although Dr. Feldman-Summers did not testify about the effect that the alleged sexual assault had on Crytzer's state of mind and mental condition, the court's proposed order would have permitted Crytzer to recall this expert to present the foundational facts regarding the history of sexual abuse. Crytzer refused the court's proposal.
 
 
 58
 Crytzer's claim of prejudice from incomplete discovery and an early trial setting is equally without merit. Crytzer did not move to compel the testimony of alleged non-compliant deponents or the production of documents prior to trial or even on the day of trial in spite of the district court's warning that unjustified delay by the defense would result in a continued trial date. Moreover, prior to the close of Crytzer's case, the trial court offered to recess the trial for "a couple of weeks" to permit Crytzer to engage in additional discovery. The court also stated that it would permit Crytzer to reopen her case in chief. Crytzer's rejection of the court's offer invited any error caused by the absence of additional discovery. Crytzer has failed to demonstrate that the district court abused its discretion in ordering bifurcation of Crytzer's claims.
 
 VII.
 
 59
 Crytzer contends that the court should have instructed the jury that an attorney has a duty to an unrepresented adverse party to advise that legal counsel should be sought before executing a release. The district court instructed the jury that the relevant question on Crytzer's theories of invalidity of the release was the "unavailability of independent advice." We review the jury instructions as a whole to determine whether "the trial judge gave adequate instructions on each element of the case to insure that the jury fully understood the issues." Los Angeles Memorial Coliseum Comm'n v. Nat'l Football League, 726 F.2d 1381, 1398 (9th Cir.) (citations omitted), cert. denied, 469 U.S. 990 (1984).
 
 
 60
 Crytzer cites Bohn v. Cody, 832 P.2d 71 (Wash.1992) to support her claim that the Bengals' attorney owed a duty to advise her to seek the advice of her own attorney before she signed the release agreement. Brody, however, is inapposite. In Brody, the reviewing court held that summary judgment was improperly granted because an issue of fact existed regarding whether an attorney owed a duty of care to his client's parents. Id. at 76. The parents loaned money to their daughter after a discussion with her attorney. The parents alleged that they entered into the loan agreement after the attorney gave them misleading information concerning his client's financial condition. Id. After their daughter failed to repay the loan, the parents sued the attorney for malpractice. The Supreme Court of Washington held that "[u]nder the extreme facts of this case, we hold simply that an attorney should advise the unrepresented party to seek independent counsel before the attorney discusses the transaction with that party." Id. at 77. Brody does not support Crytzer's contention that an attorney must always advise an unrepresented party to seek independent legal advice. Because Crytzer failed to demonstrate the existence of "extreme facts," as required by Washington law, the district court did not err in refusing to admonish the jury that an attorney must inform a third party to seek the advice of independent counsel. In this matter, no showing was made that the Bengals' attorney gave Crytzer misleading information.
 
 
 61
 Crytzer also argues that the district court erred in refusing to instruct the jury on the general law of waiver of a known right. A release, however, is governed by contract principles because it is a contract. Nationwide Mut. Fire Insur. Co. v. Watson, 840 P.2d 851, 856 (Wash.1992). Crytzer's proposed instruction on waiver does not reflect the law applicable to the validity of a release.
 
 
 62
 The Bengals correctly argue that the issues of voluntariness and capacity were adequately covered by other instructions. See, e.g., Instruction 11 ("a person who voluntarily executes a contract is bound by its terms and effect"); Instruction 13 (the jury must decide whether Crytzer possessed "sufficient mind or reason to reasonably understand the nature, terms and effect of the release"); Instructions 16 and 17 (the jury must decide whether Crytzer had been "deprived of her free will" and whether the defendants had "seriously impair[ed] [her] free and competent exercise of judgment"). In viewing the totality of the jury instructions, we conclude that the trial court adequately instructed the jury on each of Crytzer's theories.
 
 VIII.
 
 63
 Crytzer contends that the district court erroneously excluded evidence of her condition from October 3, 1990, the date of the alleged rape, to the present time. Crytzer claims this evidence is relevant on the issue of fairness of the bargain and adequacy of the consideration. A district court's evidentiary rulings are reviewed for abuse of discretion. McGonigle v. Combs, 968 F.2d 810, 818 & n. 6 (9th Cir.) (citation omitted), cert. dismissed, 113 S.Ct. 399 (1992).
 
 
 64
 The record demonstrates that the district court permitted Dr. Feldman-Summers to testify that Crytzer was not aware of the future consequences of her injury in October of 1991 when she signed the release. Prior to trial, the district court ruled that Crytzer was entitled to show through the testimony of Dr. Feldman-Summers that Crytzer was suffering from an injury at the time she signed the release, that she was not aware of the injury, and that the injury continued. The district court reasoned that such testimony would be admissible to demonstrate the adequacy of the consideration that was received, and the likelihood of inadequate knowledge concerning future consequences of her injuries.
 
 
 65
 The district court did not abuse its discretion in excluding additional evidence of Crytzer's treating physicians regarding her present condition and future prognosis. See Bennett v. Shinoda Floral, Inc., 739 P.2d 648, 653 (Wash.1987) (by signing a release when injury is known, "a person is aware that there is a chance that he could be left insufficiently compensated if the prognosis changes").
 
 
 66
 AFFIRMED.
 
 
 67
 Circuit Judge KLEINFELD concurs in the result.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3