[No. 12131-3-III.    Division Three.    October 5, 1993.]

CINDY L. HEIGIS, *Appellant,* v. MONICA MARIE CEPEDA, ET AL, *Respondents.*

*L. Neil Axtell* and *Axtell & Briggs,* for appellant.

*Stephen C. Haskell* and *Chase, Haskell, Hayes & Kala-mon, P.S.; William R. Hickman, Pamela A. Okano,* and *Reed McClure,* for respondents.

THOMPSON, C.J. — Cindy L. Heigis brought this action against Monica and John Doe Cepeda for personal injuries she suffered in an automobile accident allegedly caused by Ms. Cepeda's negligence.[1] The Cepedas answered, raising as an affirmative defense a release executed by Ms. Heigis in their favor. Following trial, the Superior Court dismissed Ms. Heigis' action. In this appeal, she contends the court erred when it held the release was not obtained by over-reaching, fraud, and/or mutual mistake. We affirm.

On July 8, 1987, Cindy Heigis was involved in a collision with a vehicle driven by Monica Cepeda. Ms. Heigis suffered back and neck injuries, and her two minor children and an adult passenger were also hurt. On September 3, 1987, Ms. Heigis accepted $2,578 to settle her negligence claim against

---

[1] In the same complaint, Ms. Heigis also sued State Farm Fire and Casualty Company, which insured both her and the Cepedas. She alleged State Farm breached the Consumer Protection Act and its obligation to deal with her in good faith. Prior to trial, the court ordered Ms. Heigis to file all claims against State Farm in a separate amended complaint. The court also granted the Cepedas' motion to bifurcate their trial from that of State Farm. That case is not involved in this appeal.

the Cepedas. In exchange, she signed a release which discharged the Cepedas

> from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever, and particularly on account of all injuries, known and unknown, both to person and property, which have resulted or may in the future develop from an accident which occurred on or about the 8th day of July, 1987 at or near Monroe and Walton.
>
> . . . .
> Undersigned hereby declares that the terms of this settlement have been completely read and are fully understood and voluntarily accepted for the purpose of making a full and final compromise adjustment and settlement of any and all claims, disputed or otherwise, on account of the injuries and damages above mentioned, and for the express purpose of precluding forever any further or additional claims arising out of the aforesaid accident.

Both Ms. Heigis and the Cepedas were insured by State Farm Fire and Casualty Company. At trial, State Farm adjuster Martha Coulter testified that she secured the release from Ms. Heigis on behalf of the Cepedas. Ms. Coulter met with Ms. Heigis 2 days after the accident and again on July 30 when she paid her for her car, which was totaled. The check for these damages bore a notation that the insured was Jose Cepeda.[2] Ms. Coulter spoke with Ms. Heigis by telephone on two or three other occasions prior to obtaining the release. She stated it is her habit to advise claimants in double claim situations (*i.e.*, instances in which State Farm insures both the at-fault party and the claimant) that she is representing the auto policy of the at-fault party and that the claimant can file for any medical expenses under the personal injury protection provision of his or her own State Farm policy.

On September 1, 1987, Ms. Coulter telephoned Ms. Heigis with an offer of $2,850 to settle her and her two children's claims. The next day, Ms. Heigis counteroffered $5,800. Neither Ms. Coulter nor Ms. Heigis attempted to break her offer down in terms of amounts allocated for damages such as

---

[2]Jose Cepeda is Ms. Cepeda's father. He was the named insured on the State Farm policy.

pain and suffering or future wage loss. An agreement was reached to settle the claims for $2,578 for Ms. Heigis and $806 and $506 for the two children. Ms. Coulter testified:

A: I did not discuss the future ramifications. I explained it was a full and final settlement.
Q: But apparently, without going into the elements of what this release means?
A: I did not discuss the future ramifications.
Q: Well, you did not even discuss what you were paying for her up to that point, did you?
A: I said pain and suffering, and wage loss.
Q: And that's all you said?
A: Yes.
Q: Did you — did you attempt to explain the two policies to her?
A: I explained that I was handling the auto policy for the other vehicle that struck her vehicle. . . . And that she had a separate file set up off her own auto policy.

According to Ms. Coulter, she neither stated nor implied that more sums would be paid after the agreed amount was remitted. She had no specific recollection of what she and Ms. Heigis discussed when Ms. Heigis signed the release. Over the objection of Ms. Heigis' counsel, Ms. Coulter was allowed to testify about her routine in such situations. She stated, "I tell them to speak to their own adjuster regarding [medical]", and "this concludes any . . . contact you'd have with me."

At the time Ms. Heigis signed the release, she was dealing with other State Farm employees on her first party claims. On July 16, 1987, Tim Donovan sent her a letter asking her to fill out an application for benefits and return it with any medical bills she had received. He observed that her policy provided for medical coverage for "reasonable and necessary treatment" and that State Farm may "ask you to be examined by a doctor of our choice if treatment of your injury appears excessive or inappropriate". By letter dated September 2, 1987, the day before Ms. Heigis signed the release, Beverly Hill, Mr. Donovan's assistant, notified her that State Farm had scheduled an independent medical exam (IME) for her on September 25. As a result, Ms. Heigis said she believed State Farm regarded her injuries as "excessive, and

inappropriate". She subsequently engaged an attorney and canceled the IME.

Ms. Heigis also testified concerning her contacts with Ms. Coulter:

Q: And is it correct that the — one of the phone calls from Ms. Coulter, just before September 3, a day or two before, was one of those calls where she's *saying you should settle, and you will feel a lot better after you get the paperwork behind you?*

A: Yes, that's when she called.

Q: Did you have any idea, whatsoever, when you signed that release, that you were cutting off your future right to recovery for pain and suffering? Or loss of earning capacity, alteration of life, or any of those items?

A: No. At the time I had no idea what those items meant.

. . . .

Q: . . . No one from the insurance carrier had ever explained them to you?

A: Right.

(Italics ours.) She further testified that as of the date of trial, October 1991, her back still hurt, she had not returned to her part-time job as a cocktail waitress, and she had incurred $4,309.34 in medical expenses to treat injuries caused by the accident.

Ms. Heigis assigns error to the following findings and conclusions entered by the trial court: (1) Ms. Coulter explained to Ms. Heigis her role as a representative for the Cepeda policy. (2) Ms. Heigis consented to settle her claim, even though she had not fully recovered, believing she would do so in the near future. (3) Ms. Heigis assumed any ongoing medical expenses or wage loss would be covered by her insurance. In fact, coverage for these items existed under the personal injury protection provision of her policy. And, (4) the release was not obtained by fraud or overreaching and, therefore, was binding upon Ms. Heigis.

First, Ms. Heigis seeks to avoid the release on the ground it was obtained by overreaching on the part of Martha Coulter, the State Farm agent who represented the Cepedas' policy. *See Pepper v. Evanson*, 70 Wn.2d 309, 313, 422 P.2d 817 (1967) (a release is voidable if it is the result of fraud,

overreaching, misrepresentation, or mutual mistake). She cites the enhanced obligations an insurer owes its insureds as part of its duty of good faith. *See Tank v. State Farm Fire & Cas. Co.*, 105 Wn.2d 381, 386, 715 P.2d 1133 (1986), and authorities therein. Ms. Heigis argues Ms. Coulter had a duty to advise her of the coverages for pain and suffering and loss of earning capacity she was giving up by agreeing to the settlement.

Although this action against the Cepedas is separate from Ms. Heigis' bad faith action against State Farm, the issues in the two actions overlap insofar as Ms. Heigis seeks to avoid the release based upon the conduct of State Farm agent Coulter. Generally, the tortfeasor's insurer does not owe third party claimants enhanced obligations. *Tank*, at 395. Does this general rule apply here, in a situation in which the third party claimant, Ms. Heigis, is insured by the same insurer as the tortfeasor?

█ █ We could not find any Washington case addressing this issue. The majority of jurisdictions which have considered it hold there is *no* enhanced duty of good faith owed by an insurer when dealing with its own insured as a third party claimant. *Clinton v. State Farm Mut. Auto. Ins. Co.*, 110 Ga. App. 417, 138 S.E.2d 687 (1964) (plaintiff dealt "at arm's length" with State Farm with respect to his personal injury claim even though he was also insured by State Farm); *Chavez v. Chenoweth*, 89 N.M. 423, 553 P.2d 703 (Ct. App. 1976) (representations were made in arm's length dealings on the basis of plaintiff's claim against State Farm as the insurer of Chenoweth; nevertheless, the court found the allegations sufficient to state a claim of fraud); *Pixton v. State Farm Mut. Auto. Ins. Co.*, 809 P.2d 746 (Utah Ct. App. 1991) (there is no duty of good faith and fair dealing imposed upon an insurer running to a third party claimant, such as Pixton, seeking to recover against the company's insured). *See also* Annot., *Liability Insurer's Rights and Duties as to Defense and Settlement as Affected by Its Having Issued Policies Covering Parties Who Have Conflicting Interests*, 18 A.L.R.3d 482, 485 § 2 (1968).

Ms. Heigis relies upon *State Farm Mut. Auto. Ins. Co. v. Ling*, 348 So. 2d 472 (Ala. 1977). There, the court found the plaintiff "was repeatedly assured by State Farm [which insured both the plaintiff and the at-fault party] that he had nothing to worry about, the accident was entirely the fault of [the other insured] and his expenses would be paid; State Farm would settle his claim." *Ling*, 348 So. 2d at 474. Thus, State Farm acted fraudulently when it required a doctor's report as a condition of settling the claim, knowing that the statute of limitation would run before such a report could be filed. *Ling*, 348 So. 2d at 474, 476. In contrast, Ms. Coulter told Ms. Heigis she would probably feel better after she settled and "got the paperwork behind her", but there is no testimony she led Ms. Heigis to believe she was watching out for her interests.

We hold Ms. Coulter had no affirmative obligation to disclose the coverage specifics of either Ms. Heigis' own policy or that of the Cepedas. They dealt at arm's length. Consequently, the trial court correctly determined the release was not void for overreaching.

Second, Ms. Heigis attacks the court's conclusion that the release was not fraudulently obtained. *See Pepper*, at 313. In this regard, she assigns error to the court's permitting Ms. Coulter to testify that it is her habit to advise claimants in double claim situations that she represents the adverse party. According to Ms. Heigis, without this testimony, there is nothing to support the court's finding.

ER 406 provides:

> Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

The habit in question must be just that: "[O]ne's regular response to a repeated specific situation so that doing the habitual act becomes semi-automatic." *See* Comment, ER 406. "As with most evidentiary questions, the determination

of admissibility is within the trial court's discretion." *Norris v. State*, 46 Wn. App. 822, 826, 733 P.2d 231 (1987).

■ Ms. Coulter's testimony about her routine practice in double claim situations qualifies as evidence of habit. As an adjuster, she deals with double claims on a repeated basis. She testified she "always" advises such claimants that she represents the policy of the at-fault party and that they can file for their medical expenses under their own policy. Although corroboration is not required, *see* ER 406, the fact the checks she gave Ms. Heigis bore the notation "Cepeda policy" lends credence to her testimony.

Accordingly, the trial court did not abuse its discretion when it admitted Ms. Coulter's testimony on this issue. That testimony supports the court's holding that Ms. Coulter did not mislead Ms. Heigis as to her role when she negotiated the settlement.

■ Ms. Heigis also contends the release was procured by fraud, based upon "the gross inadequacy" of the consideration and upon Ms. Coulter telling her she would feel better after she got the paperwork behind her. " 'When the inadequacy of consideration is very gross, fraud will be presumed . . ..' " *Hicks v. Jenkins*, 68 Wash. 401, 406, 123 P. 526 (1912) (quoting 6 *American Engineering Encyclopedia Law* 701 (2d ed.)). In *Hicks*, the plaintiff released the defendant for $152.50, even though his injury caused episodes of mental impairment so severe he could not function normally. Here, Ms. Heigis settled for $2,578 and now alleges special damages of $4,309. The alleged inadequacy of the consideration in this case is not so gross as to presume fraud.

■ Finally, the statement by Ms. Coulter predicting Ms. Heigis would feel better once she settled is the assertion of an opinion, not a fact. It does not support Ms. Heigis' allegation the release was fraudulently obtained. *Cf. In re WPPSS Sec. Litig.*, 650 F. Supp. 1346, 1350 (W.D. Wash. 1986) (opinions are generally not actionable as they are not misstatements of fact). The trial court correctly determined the release was not void for fraud or misrepresentation.

Third, Ms. Heigis disputes the trial court's holding, as found in its oral opinion, that there was no mutual mistake of fact. *See Pepper*, at 313. She contends even Ms. Coulter did not know what coverages the release concerned, and she was also mistaken as to the extent of coverage under Ms. Heigis' own policy. But Ms. Heigis does not provide any citations to the record to support her assertions. We saw no such evidence in our own review of the record. As State Farm points out, Ms. Coulter's testimony is to the contrary.

Fourth, we address the Cepedas' request for attorney fees under RAP 18.9. RAP 18.9 provides for such an award when the appeal is frivolous, *i.e.*, it presents no issue upon which reasonable minds can differ. *Boyles v. Department of Retirement Sys.*, 105 Wn.2d 499, 506-07, 716 P.2d 869 (1986). Whether an insurer owes fiduciary duties when dealing with its insured in a third party context presents a debatable issue; therefore, we refuse to award fees.

Affirmed.

MUNSON and SWEENEY, JJ., concur.