[No. 13746-5-III.    Division Three.    November 16, 1995.]

ALLEN RAY HOOPER, ET AL., *Appellants*, v. YAKIMA COUNTY, *Respondent*.

*Harold J. Moberg*, for appellants.

*Jeffrey C. Sullivan, Prosecuting Attorney for Yakima County*, and *Ronald S. Zirkle, Deputy*, for respondent.

SWEENEY, A.C.J. — Allen Ray Hooper was injured when his pickup truck and a vehicle driven by a Yakima county employee collided. The day after the accident, Mr. Hooper executed a release and settlement agreement in favor of Yakima County releasing the County from liability resulting from the accident. He and his wife, Svea Janet Hooper, later sued the County for damages. The County moved for summary judgment based on the release. The trial court concluded that in the absence of fraud or mutual mistake, the release was valid. The Hoopers appeal arguing, among other things, that genuine issues of material fact remain as to whether the release was fairly and knowingly made. Mrs. Hooper also argues her claim against the County was not discharged because she did not sign the release.

Because the Hoopers' complaint was dismissed on the County's motion for summary judgment, we engage in

the same inquiry as the trial court.[1] Summary judgment is appropriate only when there is no genuine issue as to any material fact,[2] considering the evidence in a light most favorable to the nonmoving party.[3] Because we consider the evidence in a light most favorable to the nonmoving party, we focus primarily on the factual representations set out in the Hoopers' affidavits, most of which were contradicted by Dave Robins, the County's Accident Prevention Program Coordinator. Unless reasonable minds can reach but one conclusion, factual questions must be left to the trier of fact.[4]

Mr. Hooper filed an affidavit in which he represented that he was self-employed in the junk and recycling business. Although he graduated from high school, he had considerable trouble reading, writing and spelling. He described himself as disabled and dependent upon his wife to write checks, pay bills, and read correspondence. Mr. Hooper said that on the day following the accident, his wife called the Yakima County Courthouse to find out what they could do about the accident. The truck was the family's only means of transportation. Mr. Robins returned the phone call that day. Mr. Hooper and his wife gathered their receipts and went to the courthouse to meet with Mr. Robins. Mrs. Hooper asked Mr. Robins if the County would rent a car for them. Mr. Robins responded it would not because of the cost. Mr. Hooper's father, who had accompanied the couple, asked Mr. Robins about lost wages. Mr. Robins said the County would pay $600 for lost wages for the next thirty days.

After Mr. Robins and the Hoopers discussed what the County would pay for the truck, Mr. Robins handed Mr. Hooper a release and settlement agreement and asked

---

[1]*Nationwide Mut. Fire Ins. Co. v. Watson*, 120 Wn.2d 178, 186, 840 P.2d 851 (1992).

[2]*Meaney v. Dodd*, 111 Wn.2d 174, 177-78, 759 P.2d 455 (1988).

[3]*Hurlbert v. Gordon*, 64 Wn. App. 386, 393, 824 P.2d 1238 (1992).

[4]*Ruffer v. St. Frances Cabrini Hosp.*, 56 Wn. App. 625, 628, 784 P.2d 1288, *review denied*, 114 Wn.2d 1023 (1990).

him to sign it. The Hoopers told Mr. Robins they did not understand the agreement. Mr. Robins tried to find a deputy prosecuting attorney to explain it, but none was available. Mr. Robins told the Hoopers they had to sign the release if they wanted their money. Mr. Hooper said that it was his understanding he was settling only the property damage claims and the amount the County was going to pay him for medical bills and wages for the next thirty days. He expected that he and Mr. Robins would meet later to discuss the total wages lost, total medical bills, and compensation for his injuries.

Mrs. Hooper said that she, her husband and her father-in-law met with Mr. Robins. He handed them a prepared release and settlement agreement. She read the document and told Mr. Robins she did not understand what Mr. Hooper was asked to sign. When Mr. Hooper hesitated about signing the agreement, Mr. Robins told him that it "would not apply to any injuries or medical expenses or wage losses after the thirty days and that it was simply so that we could get a check to buy alternative transportation . . . ."

The release clearly and categorically releases all of the Hoopers' claims.

The thrust of the Hoopers' argument is that the release was not fairly or knowingly made largely due to the inequality of bargaining positions of the Hoopers and the County. We do not, therefore, consider the trial court's basis for dismissal—fraud or mutual mistake. The inequality, they continue, resulted because Mr. Hooper was not represented by an attorney and has only limited intelligence. They also complain that the County paid only a "paltry" sum for the claim. They argue that given the lack of medical opinions at the time the release was executed, it was highly unlikely that they had knowledge of the future consequences of Mr. Hooper's injuries.

■ ■ A release may be avoided on grounds less than those required for other contracts. Our supreme court

requires that a release be fairly and knowingly made.[5] In making that determination, we consider:

> (1) the peculiar dignity and protection to which the law cloaks the human person, as contrasted with articles of commerce; (2) the inequality of the bargaining positions and relative intelligence of the contracting parties; (3) the amount of consideration received; (4) the likelihood of inadequate knowledge concerning future consequences of present injury to the human body and brain; and (5) the haste, or lack thereof, with which release was obtained.[6]

Significantly in *Finch*, the court remanded, finding material questions of fact as to whether the release was fairly and knowingly made. The trial court here addressed the question of mutual mistake and not the question required by *Finch*—whether the release was fairly and knowingly made.

Viewing the evidence in a light most favorable to the Hoopers, their representations raise genuine issues of material fact on this question. Specifically, the Hoopers say they told Mr. Robins they did not understand the document. They claim Mr. Robins tried to find an attorney to explain it to them but could not. The Hoopers claim that they were told they had to sign the release before they could receive money for their damaged vehicle—a vehicle which was their sole means of transportation and crucial to their livelihood. The Hoopers were uneducated people. The bargaining positions here were therefore unequal. And there is at least an issue of fact as to whether the release was fairly and knowingly made.

Consideration of the other factors set out in *Finch* likewise militate in favor of remand. The Hoopers were compensated for their special damages only. The County paid nothing for any general damages to either of the

---

[5]*Finch v. Carlton*, 84 Wn.2d 140, 144, 524 P.2d 898 (1974) (whether a release bars an action for later discovered personal injuries is a question of fact and depends upon whether it was knowingly made).

[6]*Finch*, 84 Wn.2d at 146 (quoting *Finch v. Carlton*, 10 Wn. App. 32, 39, 516 P.2d 212 (1973) (McInturff, J., dissenting)).

Hoopers. Mr. Hooper had had an examination in the emergency room immediately following the accident, but no further medical evaluation. And finally the release was signed the day following the accident largely because of the Hoopers' pressing need for transportation.

Mrs. Hooper also claims that the release was not binding on her because she did not sign it.[7] The County responds that this assignment of error was not raised in the trial court.[8] And even if it had been, the County asserts the release should be enforced because she participated in its negotiation and was present when it was signed. We have already concluded that reasonable minds could differ on whether this release was fairly and knowingly made.

■ A claim for loss of consortium is a separate, independent, nonderivative action of the deprived spouse.[9] Here it is undisputed that no one present at the negotiations discussed, considered, or even contemplated any claims by Mrs. Hooper. The release stated that the "*undersigned* acknowledges to be in full accord, satisfaction and settlement of a disputed claim" and the "*undersigned* hereby releases and forever discharges" Yakima County. (Emphasis added.) Only Mr. Hooper signed the release.

■ We also reject the County's assertion that Mrs. Hooper authorized or ratified the release. A person ratifies a contract if, after discovery of the facts that would war-

---

[7]*See Nichols Hills Bank v. McCool*, 104 Wn.2d 78, 83, 701 P.2d 1114 (1985) (delegation of authority to manage community property does not cloak the managing spouse with authority to enter into a transaction that specifically requires involvement of both parties).

[8]*In re Tang*, 57 Wn. App. 648, 655, 789 P.2d 118 (1990); RAP 2.5(a) (arguments and theories not presented to the trial court will not be considered on appeal).

[9]*Cramer v. Pemco Ins. Co.*, 67 Wn. App. 563, 566, 842 P.2d 479 (1992) (wife's claim for loss of consortium is of an independent nature); *Conradt v. Four Star Promotions, Inc.*, 45 Wn. App. 847, 853, 728 P.2d 617 (1986); *Christie v. Maxwell*, 40 Wn. App. 40, 47, 696 P.2d 1256 (1985) (wife who claims loss of consortium is an individual with separate legal rights which arise independently of her identity as a member of the marital community).

rant rescission, he or she is silent or continues to accept benefits under the contract.[10] "A party charged with ratification must have acted voluntarily, with full knowledge of the facts."[11] Even though Mrs. Hooper may have been willing to have her husband release the family claim for physical damage to the truck, or for his own personal injuries, his signing of the release does not indicate she was willing to sign away her claim for loss of consortium. And as we have noted, the language of the release indicates the parties did not even contemplate this separate claim of Mrs. Hooper.

The summary judgment of the trial court is reversed. As to Mr. Hooper, we remand for trial on the question of whether the release was fairly and knowingly made. As to Mrs. Hooper, we hold that the release was not binding.

MUNSON and SCHULTHEIS, JJ., concur.

---

[10]*Ward v. Richards & Rossano, Inc.*, 51 Wn. App. 423, 433, 754 P.2d 120 (1988).

[11]*Ward*, 51 Wn. App. at 433.