# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 57249-4-II |
| Respondent, | |
| v. | |
| ANDREW MCCONNELL, | UNPUBLISHED OPINION |
| Appellant. | |

VELJACIC, J. — Andrew McConnell appeals his conviction for assault in the second degree with a domestic violence finding and a deadly weapon enhancement. He argues that (1) the trial court erred by denying his request for a jury instruction for the lesser included offense of discharging a firearm and (2) he received ineffective assistance of counsel because his attorney failed to request a lesser included offense instruction for unlawful display of a firearm. In supplemental briefing, McConnell also argues that we must remand for the trial court to determine his responsibility for the imposed legal financial obligations (LFOs) because the relevant statutes were amended while his appeal is pending.

We hold that the trial court did not err by denying the lesser included offense instruction on discharging a firearm, because discharging a firearm is not a lesser included offense of assault in the second degree. We also hold that McConnell has not met his burden to show that counsel's performance was deficient or that he was prejudiced by counsel's failure to request the lesser included instruction for unlawful display of a firearm instead of the lesser included instructions his counsel *did* request. Accordingly, we affirm, but we hold that McConnell is entitled to the benefit

of the newly enacted LFO legislation, and we remand for the trial court to determine his responsibility under this new legislation.

FACTS

I.    BACKGROUND

McConnell and his girlfriend, Megan Reed, went camping with their friend Leslie Mohr. In the evening, Mohr and Reed sat around a campfire while McConnell shot a few rounds of target practice with a handgun.

According to Mohr's and Reed's versions of events, McConnell began using offensive language toward Reed, and she responded by packing things up and telling him that he needed to leave. McConnell proceeded to follow Reed around, ripping things out of her hands and throwing them into a ravine. McConnell asked for his gun and Reed tossed it to him while it was in its holster. Reed claims that McConnell then picked up the gun and fired it four times into the ground between them. Mohr did not witness the shooting but did hear four shots. Mohr and Reed recall McConnell throwing the truck keys into the ravine. Reed and Mohr left in Mohr's car. That evening, Mohr and Reed gave statements to two sheriff's deputies.

According to McConnell's version of events, he was no longer interested in camping because the weather was bad and Mohr was "annoying." 2 Rep. of Proc. (RP) at 522. Reed offered him her truck and he began packing when Reed approached him at the back of the truck, picked up his gun, and threw it at him. McConnell said that the gun was not in its holster when it was thrown. He picked it up, wiped some mud off the trigger, and accidentally fired it once into the ground. He claimed Reed continued to follow him around after the accidental firing. He denied throwing anything into the ravine, although he stated that at some point he had tossed Reed's

2

sleeping bag aside and had thrown her keys in front of the truck. McConnell proceeded to walk home.

II.    PROCEDURAL HISTORY

The State charged McConnell with one count of assault in the second degree with domestic violence, predicated on his use of a deadly weapon, and one count of reckless endangerment with a domestic violence allegation[1] both as to his girlfriend Reed.

The trial began in July 2022. McConnell testified on his own behalf, and the State presented testimony from Reed, Mohr, Deputy Kevin Acdal,[2] Reed's mother and stepfather, and Mohr's brother.

For the assault charge, McConnell requested a lesser included offense instruction for discharging a firearm. The proposed instruction read, "A person commits the crime of discharging a firearm when he or she willfully discharges any firearm in a public place or in any place where any person might be endangered thereby." 2 RP at 573; *see* 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTION: CRIMINAL 133.20, at 725 (5th ed. 2021) (pattern instruction on aiming or discharging a firearm). McConnell argued that, although discharging a firearm is not an element of assault in the second degree, under these special circumstances, McConnell was entitled to the instruction because the assault could only have been committed by discharging the firearm. The court denied the request when the State brought a specific case, *State v. Bishop*, 6 Wn. App. 146, 491 P.2d 1359 (1971), to the court's attention:

---

[1] McConnell was originally charged with two counts of assault in the first degree, listing Reed and Mohr as the alleged victims.

[2] Acdal was assigned to investigate this case many months after the incident.

3

[STATE]: Thank you. I'm handing Your Honor and Defense Counsel *State v. Bishop*. This Court of Appeals, Division 1, case clearly states—specifically it talked about it on the very last page. That discharge requirement is not a lesser included and the court properly denied it to be added.

THE COURT: Where's that, last page?

[STATE]: Last page, final paragraph.

THE COURT: It appears to be pointing out the distinction the court was concerned about.

[STATE]: Yes, sir.

THE COURT: [Defense]?

[DEFENSE]: Yeah, so, I didn't have an answer and I guess we do now. All right.

THE COURT: So, the Court will deny the lesser included discharging a firearm.

2 RP at 586-87. The court did instruct the jury on the lesser included offense of assault in the fourth degree[3] that McConnell requested.[4]

The jury convicted McConnell as charged, including the special allegations of domestic violence and use of a deadly weapon. The reckless endangerment conviction was vacated by the sentencing court on double jeopardy grounds. The sentence imposed was 39 months, including

---

[3] The instruction on assault in the fourth degree read:

To convict the defendant of the crime of assault in the fourth degree, each of the following elements of the crime must be proved beyond a reasonable doubt:
(1) That on or about September 5, 2021, the defendant assaulted Megan Reed, and
(2) That this act occurred in the State of Washington, County of Pacific.
If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.
On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

Clerk's Papers (CP) at 80.

[4] The following definition of assault was also given: "An assault is an act done with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury even though the actor did not actually intend to inflict bodily injury." CP at 74.

the mandatory 36 month firearm enhancement. The sentencing court did not expressly find McConnell indigent in the judgment and sentence, but it found him indigent for purposes of appeal. The court imposed a $500 victim penalty assessment (VPA) and a $100 DNA collection fee.

McConnell appeals.

## ANALYSIS

I.    LESSER INCLUDED OFFENSE INSTRUCTION

McConnell argues that the trial court erred by denying the lesser included offense instruction on discharging a firearm. We disagree.

A.    Legal Principles

The standard of review applicable to jury instructions depends on the trial court decision under review. *State v. Walker*, 136 Wn.2d 767, 771-72, 966 P.2d 883 (1998); *State v. Condon*, 182 Wn.2d 307, 315-16, 343 P.3d 357 (2015). If the decision was based on a factual dispute, it is reviewed for an abuse of discretion. *Walker*, 136 Wn.2d at 771-72. If it was based on a ruling of law, it is reviewed de novo. *Id*. at 772. Here, the court based its decision on *Bishop*, which held that the discharge of a firearm is not a lesser included of assault in the second degree.[5] 6 Wn. App. at 152. Because this is a legal ruling, we review the ruling de novo.

While each party is entitled to have their theory of the case set forth in the court's instructions, the court nevertheless has considerable discretion in determining the wording of the instructions and which instructions to include. *State v. Dana*, 73 Wn.2d 533, 536, 439 P.2d 403 (1968). Jury instructions are sufficient if they permit the parties to argue their theories of the case, do not mislead the jury, and properly inform the jury of the applicable law. *Del Rosario v. Del*

---

[5] A crime is necessarily included "only when *all of the elements* of the included offense are necessary elements of the offense charged." *State v. East*, 3 Wn. App. 128, 135, 474 P.2d 582 (1970).

*Rosario*, 152 Wn.2d 375, 382, 97 P.3d 11 (2004); *State v. Winings*, 126 Wn. App. 75, 86, 107 P.3d 141 (2005). The trial court should err on the side of granting a lesser included offense instruction request. *State v. Coryell*, 197 Wn.2d 397, 415, 483 P.3d 98 (2021).

In some cases, a defendant is entitled to an instruction on a lesser included offense. *State v. Workman*, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978). *Workman* set forth a two-pronged test requiring the satisfaction of both legal and factual conditions before a party is entitled to a lesser included offense instruction as a matter of right. *Id*. First, under the legal prong of the *Workman* test, each element of the lesser offense must be a necessary element of the offense charged. *Id*. The purpose of the legal prong is to give the defendant notice of the nature and cause of the offense against which they must defend at trial. U.S. CONST. art. I, § 22; *State v. Peterson*, 133 Wn.2d 885, 889, 948 P.2d 381 (1997).

Because a defendant can be convicted only of crimes with which they are charged, a jury is permitted to find a defendant guilty of a lesser offense necessarily included in the offense so that the defendant is afforded the requisite notice.[6] *State v. Irizarry*, 111 Wn.2d 591, 592, 763 P.2d 432 (1988); *State v. Berlin*, 133 Wn.2d, 541, 544, 947 P.2d 700 (1997).

The second prong of the *Workman* test is known as the factual prong. Under that prong, the evidence in the case must support an inference that only the lesser crime was committed. *Workman*, 90 Wn.2d at 448. The factual prong of *Workman* is satisfied if "based on some evidence admitted, the jury could reject the greater charge and return a guilty verdict on the lesser." *Coryell*, 197 Wn.2d at 407.

---

[6] McConnell asks us to follow his reading of *State v. Lyon*, 96 Wn. App. 447, 979 P.2d 926 (1999), in addressing the legal prong here. *Lyon* is not binding on us; we decline to follow it.

6

While the legal prong incorporates the constitutional requirement of giving notice to the defendant of the charges against them, the factual prong incorporates the rule that each side may have instructions embodying its theory of the case if there is evidence to support that theory. *Id*.

B.  The Trial Court Did Not Err By Denying the Lesser Included Offense Instruction on Discharging a Firearm

At issue before us is the crime of assault in the second degree under RCW 9A.36.021(1)(c). "A person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree: . . . (c) Assaults another with a deadly weapon." RCW 9A.36.021(1)(c). The particular type of assault charged is an assault based on apprehension or fear of bodily harm "with a deadly weapon, to wit: a pistol." Clerk's Papers (CP) at 19. The first lesser included instruction that McConnell requested[7] was for discharging a firearm. That offense is committed when a person:

> (b) Willfully discharges any firearm, air gun, or other weapon, or throws any deadly missile in a public place, or in any place where any person might be endangered thereby. A public place shall not include any location at which firearms are authorized to be lawfully discharged.

RCW 9.41.230(1)(b).

When comparing the two statutes, it is plainly apparent that discharging a firearm, a required element of the requested lesser offense, is not a necessary element of assault in the second degree. *See* RCW 9.41.230; RCW 9A.36.021(1)(c). The second element of the lesser included offense is—discharging in "any place where any person might be endangered thereby." RCW 9.41.230(1)(b). This too is not plainly a necessary element of assault in the second degree. *See*

---

[7] The proposed instruction read as follows: "A person commits the crime of discharging a firearm when he or she willfully discharges any firearm in a public place or in any place where any person might be endangered thereby—might be endangered thereby, although no injury results." 2 RP at 573.

RCW 9A.36.021(1)(c). Because neither of the elements of discharging a firearm is a necessary element of the offense charged, discharging a firearm is not a lesser included offense of assault in the second degree. McConnell was not entitled to an instruction for discharging a firearm, and the trial court did not err in refusing the instruction. Because of the failure of the legal prong of the *Workman* test, we need not reach the factual prong.

II.      INEFFECTIVE ASSISTANCE OF COUNSEL

McConnell argues that defense counsel was ineffective by failing to request a lesser included offense on unlawful display of a firearm. We disagree.

A.      Legal Principles

We review claims of ineffective assistance of counsel de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prevail on a claim of ineffective assistance of counsel, the appellant must show both (1) that defense counsel's representation was deficient and (2) that the deficient representation prejudiced the defendant. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011) (applying the *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), test). Representation is deficient if, after considering all the circumstances, the performance falls below an objective standard of reasonableness. *Id*. at 33. Prejudice exists if there is a reasonable probability that except for counsel's errors, the result of the proceeding would have differed. *Id*. at 34.

The defendant bears the burden of establishing deficient performance. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). An appellant making an ineffective assistance of counsel claim faces a strong presumption that counsel's representation was effective. *Grier*, 171 Wn.2d at 33. Legitimate trial strategy or tactics cannot serve as the basis for a claim of ineffective assistance of counsel, but a defendant can rebut the presumption of reasonable performance by

demonstrating that there is no conceivable legitimate tactic explaining counsel's performance. *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009); *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). "'The relevant question is not whether counsel's choices were strategic, but whether they were reasonable.'" *Grier*, 171 Wn.2d at 34 (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 481, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000)).

Our state Supreme Court has previously held that the failure to offer jury instructions on a lesser included offense does not amount to ineffective assistance. *Id*. at 34-35. For example, in *Grier*, the defendant was convicted of murder in the second degree. *Id*. at 20. On appeal, the defendant argued that she received ineffective assistance at trial because counsel withdrew a request for jury instructions on the lesser included offense of manslaughter in the first and second degree. *Id*. The court held that this approach did not constitute ineffective assistance because defense counsel was pursuing a legitimate "all or nothing" trial strategy. *Id*. Further, the court reasoned that trial tactics and the methodology to be employed rests in the attorney's judgment, and that these decisions require significant latitude. *Id*. at 32, 39. The court noted that "the complex interplay between the attorney and the client in this arena leaves little room for judicial intervention." *Id*. at 40.

B.     McConnell Fails to Show Ineffective Assistance of Counsel

McConnell asserts that, regardless of the trial court's ruling on the discharging instruction, defense counsel should have requested a lesser included offense instruction on unlawful display of a firearm. He reasons that unlike the discharging offense, unlawful display of a firearm is well established as a lesser included offense of assault in the second degree with a deadly weapon, so had counsel requested this instruction, the trial court would have granted it and the jury would have had the option of returning a gross misdemeanor conviction, sparing him the three year

9

firearm enhancement.  *See* RCW 9.94A.533(3)(b), (e).  Further, McConnell argues that failure to request this instruction could not be part of any conceivable trial strategy because counsel requested two other gross misdemeanor lesser included offenses, and closing argument emphasized the weakness of the State's evidence that McConnell had the requisite intent for assault in the second degree.

McConnell does not rebut our strong presumption of effective performance.  *Grier*, 171 Wn.2d at 33.  As stated above, the inquiry on appeal is not to scrutinize possible inconsistencies in trial strategy, as McConnell does here; rather, we merely ask if these decisions were reasonable. *Id*. at 34.  Deciding not to request one lesser included instruction that a defendant may be entitled to in favor of others does not fall below an objective standard of reasonableness.  *See id*. at 33.  To hold otherwise would be to require counsel to argue for every possible lesser included in every case, which runs the risk of confusing the jury and impeding other trial tactics counsel chooses to employ.  The decision to request a lesser included instruction is a strategic one, and we afford counsel significant latitude in making these strategic decisions.  *Id*. at 39.  In the absence of unreasonable decision making, we presume that counsel performed effectively, and judicial intervention is not justified.  *See id*. at 40.

Furthermore, even if failure to request this instruction was deficient performance, McConnell cannot show he was prejudiced.  McConnell primarily argues that, by failing to request the lesser included instruction, the jury faced a choice between acquittal or resolving all doubts as to the element of intent in favor of conviction.  McConnell asserts that the instruction on unlawful display would have given the jury a third option.

We disagree.  The jury did not have this binary choice as McConnell describes.  On the contrary, the jury was given the choice to convict on reckless endangerment, a charge that does

not require assaultive intent. The reckless endangerment instruction read, "A person commits the crime of reckless endangerment when he recklessly engages in conduct that creates a substantial risk of death or serious physical injury to another person." CP at 81; *see* RCW 9A.36.050(1). This crime does not require intent, but requires recklessness, yet when presented with this option, the jury still convicted McConnell of assault in the second degree. This fact undercuts McConnell's argument. McConnell cannot show he was prejudiced by counsel's failure to request the lesser included instruction.

McConnell has not shown that his trial counsel performed deficiently or that he was prejudiced by counsel's performance. We hold that McConnell's ineffective assistance claim fails.

III.    AMENDMENTS TO LEGAL FINANCIAL OBLIGATION STATUTES

In supplemental briefing, McConnell argues that the court must remand for the trial court to either strike the entire $600 in fees or hold a hearing to determine his responsibility for those fees under the newly enacted legislation. We agree.

When McConnell was sentenced, the court was required to impose a VPA of $500 under former RCW 7.68.035(1)(a) (2018), regardless of a defendant's indigency, as well as a $100 DNA collection fee under former RCW 43.43.7541 (2018). But those statutes have since been amended: "The court shall not impose the penalty assessment under this section if the court finds that the defendant, at the time of sentencing, is indigent as defined in RCW 10.01.160(3)." LAWS OF 2023, ch. 449, § 1. The legislature also eliminated the $100 DNA collection fee for all defendants. *See* LAWS OF 2023, ch. 449, § 4. Both amendments took effect July 1, 2023. LAWS OF 2023, ch. 449, § 27.

These statutory amendments apply to McConnell because they took effect while his appeal was pending. *State v. Ramirez*, 191 Wn.2d 732, 748-49, 426 P.3d 714 (2018); *State v. Blank*, 131

11

Wn.2d 230, 249, 930 P.2d 1213 (1997). We hold that McConnell is entitled to the benefit of LFO-related legislation enacted during the pendency of his appeal. But because the trial court has not yet determined whether McConnell is indigent as defined in RCW 10.01.160(3), we remand for the trial court to make that determination. On remand the trial court must strike the DNA fee.

## CONCLUSION

We hold that McConnell was not entitled to the lesser include offense instruction of discharge of a firearm, and that the trial court did not err in refusing the instruction. We also hold that McConnell has not met his burden to establish ineffective assistance of counsel. We affirm, but remand to determine McConnell's responsibility for the VPA under the new legislation and to strike the DNA fee.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Veljacic, J.

We concur:

_____
Glasgow, J.

_____
Cruser, C.J.